820 F.2d 1220
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Felix AVILES, Defendant-Appellant.
 No. 86-5640.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1987.
Decided June 4, 1987.
 
 Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 John A. Field, III (Field & Halfhill, on brief), for appellant.
 Diana Schact, Third-Year Law Student (William G. Otis, Assistant United States Attorney; Henry E. Hudson, United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Felix Aviles, a twenty-year-old New Yorker with a tenth grade education, was standing at a traffic circle at Washington National Airport after disembarking the Eastern Airlines shuttle from New York City when he was approached by two Drug Enforcement Administration agents. (Behind the two agents who approached Aviles stood a third agent.) The agents identified themselves and explained their purpose to intercept drug traffic. They did not inform Aviles that he could refuse to speak with them. After asking Aviles for identification, and returning the proffered identification, an airline ticket stub and a laundry receipt, the agents asked Aviles if he was carrying narcotics. Aviles said "yes." Upon request of the agents, Aviles produced two bags of cocaine from his coat pockets. The agents arrested Aviles.
 
 
 2
 Before trial Aviles moved to suppress the physical evidence and his admission that he was carrying narcotics. The government agreed to be bound by the theory that the encounter between Aviles and the agents was a consensual police-citizen encounter, foregoing any argument that the agents were justified in stopping Aviles based on an articulable suspicion under Terry v. Ohio, 392 U.S. 1 (1968). The district court denied the motion to suppress, finding that the communication between the defendant and the agents was consensual.
 
 
 3
 The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. When evidence is obtained in violation of the Fourth Amendment, the usual remedy is that it is excluded from the consideration of the trier of fact. If a person is improperly "seized" or taken into custody without adequate reason, the evidence obtained from him is tainted by the illegal police conduct and must be suppressed. However, suppression is not required when the defendant is not in custody and voluntarily reveals information to police officers.
 
 
 4
 Aviles argues that, because of the circumstances in which he was approached--three police officers stood in his path and a railing blocked his retreat--he was in custody within the meaning of the Fourth Amendment. Because the police did not have reason to arrest him, he continues, the evidence was illegally obtained and must be suppressed. However, the district court found that Aviles' contact with the agents was voluntary and the finding is not clearly erroneous. United States v. Gooding, 695 F.2d 78 (4th Cir.1982). Furthermore, the finding that Aviles' revelations were voluntary is consistent with precedent.
 
 
 5
 In United States v. Lehmann, 798 F.2d 692 (4th Cir.1986), the Fourth Circuit considered facts quite similar to those here and found that the defendant had voluntarily cooperated with the police. Defendant Lehmann had arrived at Washington National Airport from Florida. An officer approached Lehmann, identified himself and asked if Lehmann would be willing to answer some questions. Lehmann agreed. Lehmann also gave the officer permission to search his travel bag. While conducting that search the officer noticed that Lehmann had concealed a package in his pants. The package turned out to contain cocaine. Lehmann argued that the evidence must be suppressed because he was "seized" in violation of the Fourth Amendment. However, the Fourth Circuit held that Lehmann was not in custody until he was asked to accompany the officer to a private office after the cocaine had been observed. 798 F.2d at 694. Said the Court:
 
 
 6
 The record amply supports the conclusion that from Lehmann's perspective, and that of the officers, Lehmann was free to refuse the initial request for questioning and the search of his travel bag.... Lehmann's voluntary cooperation with such requests does not, absent coercive circumstances not present here, implicate the fourth amendment.
 
 
 7
 798 F.2d at 694.
 
 
 8
 There is one fact which differentiates the present case from United States v. Lehmann. Aviles was approached by three officers, who he claims blocked any route of departure. However, the district court found that Aviles' freedom of movement was not restricted and the finding is supported by the record and is not clearly erroneous. United States v. Gooding, 695 F.2d 78 (4th Cir.1982).
 
 
 9
 Other cases decided by this Court indicate that Aviles was not "seized." In Davis v. Allsbrooks, 778 F.2d 168 (4th Cir.1985), Davis was a suspect in a brutal murder. A police officer left him a note to "come see me," which Davis did. Davis was questioned by the police at the stationhouse for an entire evening and allowed to go home during the breaks. During one session Davis stated that he no longer wanted to talk. He also was not allowed to go to the restroom alone to relieve himself. He was accompanied on two separate occasions by a police officer. The police continued questioning him and he confessed to the crime. The Fourth Circuit held that Davis was not in custody when he confessed so that the police were not required to inform him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).
 
 
 10
 The decisions of other circuits also have required conduct more coercive than that in the present case before suppression will be required. E.g., United States v. Notorianni, 729 F. 520 (7th Cir.1984) (defendant stopped in airport by federal agent who identified himself and asked defendant whether he would answer some questions and consent to search of luggage was free to decline); United States v. Puglisi, 723 F.2d 779 (11th Cir.1984) (encounter at airport was not a seizure because officer approached defendant from the side, spoke in a normal voice, did not retain defendant's airplane ticket or identification, did not tell defendant that he was a suspected drug courier, and informed defendant that he could refuse to consent to a search); United States v. Jensen, 689 F.2d 1361 (11th Cir.1982) (officers' request for identification, and inquiry whether defendant was carrying drugs, did not constitute seizure); United States v. Black, 675 F.2d 129 (7th Cir.1982), cert. denied, 460 U.S. 1068 (1983) (officers who approached defendant in public place at airport, identified themselves, asked defendant for identification and questioned him whether he was carrying drugs did not effect a seizure); but see United States v. Berryman, 717 F.2d 650 (1st Cir.1983), cert. denied, 465 U.S. 1100 (1984) (defendant was not free to leave after being stopped in airport by two agents who stood on either side of him and told him that he did not "really have a choice" whether his suitcase would be searched).
 
 
 11
 In short, because the encounter between Aviles and the agents was a consensual police-citizen encounter at the time he gave information to the DEA agents, the decision is affirmed.
 
 
 12
 AFFIRMED.